Good morning, may it please the Court, Elise LaRouche for Appellant Mr. Gordon Hall. I will watch the clock and try to save two minutes for rebuttal. Mr. Hall is subject to an impermissibly vague supervised release condition that impinges on two of his fundamental rights and significant liberty interests, that being his fundamental right to free speech and familial association. The condition at issue here limits Mr. Hall's ability to have contact with his son, Benton Hall, who's also a felon, and limits their contact only to normal familial relations, and also prohibits them from having any communication or discussion regarding financial or investment matters except as related to the defendant's own care. And Mr. Hall is only asking this Court to look at the three words of this condition, normal familial relations, and challenges those as impermissibly vague. Let me ask you this. He's going to be incarcerated, I think, until I'm 99 years of age. When does he get out of jail? When does he start his supervised release? In 2030? 2033 is his estimated time. So nobody knows what the world's going to be like in 2033. These people may not even be alive by then. It's sort of an academic exercise to really make that decision right now, when it may not at all be relevant come 15, 20 years from now. Why should we have to make that decision now? Your Honor, we do understand that 2033 is very much in the future, but this Court has held in Weber that supervised release conditions are part and parcel of a defendant's sentence, and therefore they may be challenged on direct appeal. They could also be modified at any time. There's specific statutory power that the District Court has to modify terms of supervised release as conditions change. Why not deal with all of this when it really happens? He's sort of involved in trying to get an academic determination from the Court now before he actually starts supervised release. It seems to be unrealistic to me. Your Honor, again, we acknowledge that this is very much in the future, but this Court has again and again conducted facial challenges to vagueness in supervised release conditions. Well, we may be able to say that that particular condition we're not going to enforce now and leave the other one in place and provide that 20 years from now there could be an application to modify based upon who's alive and what the status of circumstances are in the real world at that time. Why should we have the District Court make an academic determination now? Well, Your Honor, the concern is that Mr. Hall does have a due process right to have clarity as to what conditions he must follow. And sure, that may not come for some time as his release date is very much in the future, but this Court is well positioned now, given the timing, to look at this and make this facial determination and deal with it efficiently. We can strike it down, and then, you know, there can always be an application 15 years from now to modify some supervised release and deal with the family situation as it may be extant at that time. They may not even be alive. Your Honor, yes, that is an option that could occur in the future. I just come from the District Court world, so I'm trying to be practical about a remand to a District Court judge to deal with something which could be purely speculative and academic when he's released. Counsel, if I could interject a question. I think Judge Block makes an interesting point about whether we should reach this issue now, but assuming for a moment that we're going to assess whether normal familial relations is impermissibly vague, assuming that we address that, I would like to know what normal means. For example, if a father decides to, wants to take his son to the Super Bowl or some, you know, extraordinary event in another city, and it's never occurred before, would that be a normal family relation? Or is it because it's unusual not a normal family relation? Your Honor, I can say that I don't know the answer to that, and I think that's why this phrasing, normal familial relations, is vague, because it meets the standard where this Court has held this condition is vague, is where individuals of reasonable minds and common intelligence might have a different application or understanding. What would be a valid provision? Suppose it said something like you can't associate with Benton Hall for any matter with any criminal implications, something like that. That would be valid, Your Honor. Our suggestion is just that the language normal familial relations be stricken from the condition so that it would read defendant is permitted to have contact with Benton Hall, but is prohibited from any contact, discussion, or communication related to financial investment matters except related to the defendant's own support. So basically reading as it is now except striking the normal familial relations. Counsel, would there be anything wrong with saying from your perspective for saying that he's permitted to consult or to meet with his family, but family contact can't be used to discuss or carry out any felonies or other crimes? I think that would be suitable, Your Honor. I think it's the phrase normal familial relations, but so long as the condition was clear that conduct was permitted, but for discussions related to furtherance of financial crimes, or even broader as it is right now, which we concede would be appropriate contact concerning financial or investment matters, would do away with the concerns of the vagueness. Or presumably any crimes. Or presumably any crimes. And there's also other conditions of Mr. Hall's supervised release that, of course, require him to not commit any new crimes. This condition goes a bit further in stopping any communications that might develop into a crime. And so, and I also, just to go back to Judge Block's concerns about the district court judge here, and certainly he did want to create a condition that allowed for Mr. Hall's ability to speak with his family, but still address the district court's concern for the public protection given the financial crimes at issue. But the language normal familial relations does remain vague. And just as one illustration earlier this year in United States v. Evans, this court looked at a supervised release condition where the defendant was required to meet other family responsibilities. You would be satisfied if we just said that it's too vague without remanding? Or do you think the matter should be remanded? I think remanding with instruction to strike, but no need for any other hearing or development on the record. That would create more time. Strike or revise? Struck. Why? Why couldn't it be revised? I guess as long as whatever the best instruction was so that normal familial relations would be either taken from the condition as it is, it could just include in the order the language that the district court could impose, no longer including normal familial relations, or revise with an instruction noting that there was concerns over the vagueness of that language. I think either of those two options. You would not object to us citing the statute which allows the district court to modify terms of supervised release based upon changing circumstances, I take it? I think that always remains open, Your Honor, as you mentioned throughout the course of a person being on supervised release. I see that I have two minutes left. I'll reserve the rest of my time for rebuttal. May it please the court. My name is Lisa Janice, and I am here representing the appellee. The district court did not abuse its discretion when it imposed a supervised release condition, allowing defendant normal familial relations with his son and two-time co-conspirator. The district court is giving considerable deference in its conclusions regarding supervised release, and it spent almost an hour at resentencing performing a detailed analysis of this one provision. Conditions of supervised release affecting fundamental rights are reviewed carefully, and the district court acted within its discretion when it mindfully designed a supervised release condition after a painstaking analysis. But this is the problem. If what he means is you shouldn't be interacting with your son in a way that co-ops him into crime, why doesn't he say that? Because in one family relationships, first of all, are we talking about normal for this family or normal for families in general, and where's the standard and who decides what's normal, given the fact that we have obviously all kinds of families in this country and all kinds of things that people do in their families? Yes. The court was, the district court was very concerned in guiding the defendant. I understand that. So that's why he added... Why didn't he do it? That's the strange part. I mean, if he had a concrete concern, which he obviously did, that they not engage in any discussions or activities that have a criminal cast, why didn't he say it? Because he didn't want to say just what was prohibited. He wanted to guide the defendant by letting him know what also what was permitted. And he did this because... That's a general matter. Anything that's not prohibited is permitted. But, you know, look, I'm trying to, you know, I come from the district world, so I guess maybe I shouldn't be sitting here asking these questions, but I don't understand what the practical impact of this, what kind of guidance is he giving him as to how he's supposed to behave himself 20 years from now? Does that have any cogency or relevancy to the present is what I'm asking you. No, it wouldn't be to the present. No, it wouldn't begin until 2033. But he'd be alive by then. What kind of guidance does he need 20 years from now? I'd like to have guidance on what I should do 20 years from now. I hope I'm around. Well, the district court was in a unique position that this defendant, it was very familiar with him, this was his fourth federal conviction, and he had used his son in the last two convictions, and the son was a co-conspirator. I get it. If he was being released now, I understand that. We'd have to have a discussion of what might be appropriate. Maybe we need to fine-tune it a little bit. But, I mean, I just don't know whether you want to burden the district court with an academic exercise which may have no correlation to reality. Well, you know, the district court at resentencing made that exact point. The district court at ER 67 said that the supervised release conditions can be modified at any time. So it didn't necessarily think that it needed to happen, that the defendant needed to be resentenced for that reason, but it did. But our case law is clear, whether it wisely or otherwise, that we look at these conditions now, not later. And so that's why we're here, to look at the condition now. Counsel, could you please address the question I asked as to what is normal? Yes. Would it be normal if the father wanted to take his son to the Super Bowl, wherever it's being held, in some faraway city, and he'd never done that before, and that's not normal? No. Most families couldn't afford that and wouldn't do that. So would that be a violation of his supervised release? No, it would not. Normal is going with your son to an event. So normal would be a common-sense understanding, something that's acceptable by the general population. What do you really – I mean, what you're saying is what he meant by normal is non-criminal. So why did he say that? Because he wanted to put a – he wanted to guide the defendant by not getting the conversation started. The conversations in the past clearly led to criminal activity. So he wanted to make sure – When they go to the Super Bowl, they could discuss something criminal, so how do we know he didn't mean to be covering that? I mean, this father is going to do something that he's never done before, and his son is going to be really grateful to him, and now he's going to start having conversation. That's maybe the exact example of something that's not normal that's going to lead to a criminal discussion. Well, it is normal to take your child somewhere. But that's question A.  Is it normal for this family or normal for the world at large? It's normal for the world at large. How do we know that? I mean, this is sort of like the Johnson discussion, right? How do we know it's normal for the world at large? I mean, frankly, I would have thought otherwise, but who knows? Because he discussed it for almost an hour. The district court talked about it, and he said that he wanted to give guidance on not only what is prohibited but what is allowed, and that's at ER 71. So then how do we know it's normal for the world at large? I mean, that's really crazy because we have, as I said before, all kinds of families. Some families never go to the Super Bowl. Some families go on trips like that all the time. So what's normal? So it's not about necessarily just going to the Super Bowl. It's going somewhere with your child, and normal is just the provision just has to be understood by people of common intelligence. He doesn't have to guess, and if he's really concerned, he can seek guidance from his probation officer or from the court. So he is guiding the defendant on what is permitted, not just what is prohibited. He really spent, first, the district court has clearly given a lot of deference and wide discretion in enacting the supervisory release condition, and he narrowly tailored this condition, stating that the value of maintaining family contact is important, but I'm not sure that it would include throwing down all limitation on contact where it is exactly that family contact that resulted in this crime, and that's at ER 72. So the use of normal familial relations was purposeful, and it was discussed from ER 80 to 84 because the defendant did request at that time that normal be taken out, and the court considered taking out the word normal, but eventually it rejected it, and it rejected it because it wanted to give that guidance. Counsel, if I could ask you a question that relates to Judge Block's inquiries. Would it be permissible under our precedent in the Ninth Circuit for us to say that we're not going to reach this issue now because it's too speculative about impact in the future? I think that the court could do that, and it could say that the court had wide discretion to impose a supervisory release condition and that if there is a concern in the future that it may be modified at any time because it is so speculative, and, of course, you can always seek guidance from the court or from your probation officer. So with that said, the provision is clear, and the district court legally imposed that supervisory release condition. Therefore, it should be affirmed by this court, and recall that the court detailed analysis to impose this condition was at length. I mean, it was almost an hour just on this one condition, and it's just for this one child, and it's reasonably related to the goals of deterrence. It was reasonably related to the protection of the public and of his son. It involves no greater deprivation of liberty than is reasonably necessary to achieve these goals, and it should remain as written. Thank you. Thank you very much. The government continues to bring the court's attention to the amount of process that was given and the discretion afforded to district court judges, and that's why. Well, I think what they're suggesting is that there is a gloss on this term that's that should be understood to be part of the condition. First of all, is there a gloss? And second of all, if there were, is that does that alleviate the vagueness problem? Your Honor, to the extent that there is a gloss in my review of the hearing that occurred below where defense counsel raised his concerns regarding the vagueness of this condition, the district court didn't then list or enumerate the types of things that would constitute normal familial activity that might put the type of conduct that may be at question in some sort of list or context where other terms have been vague. Sometimes a list does help narrow down or illuminate what is being referred to in an otherwise vague term, but there's no instance in my review of the record where the district court said the types of things he considered normal merely stated that he wanted to include that phrasing along with the prohibited types of communications. Counsel, if I could ask you a question. Same question I asked your friend on the other side of the case. That is, would we have the ability under our Ninth Circuit precedent to decide we're not going to reach this issue now because it's too speculative about what will happen in the future? Your Honor, I think that precedent really suggests to go the other way and that this court should address the issue now given that there's numerous instances of the Ninth Circuit reviewing facial challenge in Evans and Weber, in Soltero and other cases that are cited in the brief and where the court cited that the defendant shouldn't have to wonder what his condition means up until the point where his liberty is at stake, but that a court will address that in the first instance as part of the sentence. Okay, if we upheld this or didn't reach this provision now, would that have impact on conditions imposed in other cases of supervised release? I think in other cases, the more clarity that district courts and counsel from the government and defense counsel have as to what type of conditions are proper is always helpful and it does seem that supervised release conditions are an area that are receiving a lot of review and so more guidance could only be helpful. Okay, thank you. Okay, thank you very much. Thank you both for your argument in United States v. Hall. We will take a brief recess. Thank you.
judges: Gould, Berzon, Block